Argued May 21, affirmed June 25, 1973

STIVAHTIS ET AL, *Respondents, v.*
JURAS ET AL (No. 376-754), *Appellants.*

511 P2d 421

**Records—Statutes designed to protect recipients from third party**

6. Statutes providing that custodians of public records shall furnish reasonable opportunities for examination of records and providing that public welfare division shall not disclose contents of records for purposes other than those directly connected with administration of the public assistance laws are designed to protect recipients from exploitation by third parties, and, as to his own file, a recipient is not within the class of persons to whom disclosure of public assistance records is forbidden. ORS 192.030, 411.320, 418.130.

See right of access to public records.
66 Am Jur 2d, Records and Recording Laws §§ 12 et seq.
CJS, Records § 35.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellants. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Glen H. Downs,* Legal Aid Service—Multnomah Bar Association, Portland, argued the cause for respondents. With him on the brief was Laird Kirkpatrick, Legal Aid Service—Multnomah Bar Association, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

SCHWAB, C. J.

This is a representative suit brought by plaintiffs on behalf of all public assistance recipients of Oregon, seeking a declaratory judgment that, pursuant to

ORS 192.030,[1] a public assistance recipient may have access to all records maintained by the Oregon Public Welfare Division which pertain to the recipient. Plaintiffs also sought injunctive relief to enforce the declaratory judgment. The parties submitted the case to the trial court on the pleadings and on stipulated facts.

The trial court's order granted the relief prayed for. Defendants appeal, claiming that the files of the Public Welfare Division are confidential and are exempt by the provisions of ORS 411.320[2] and 418.130[3] from examination by the persons who are the subjects of the files.

---

[1] ORS 192.030 provides:

"The custodian of any public records of the state or a political subdivision, unless otherwise expressly provided by statute, shall furnish proper and reasonable opportunities for inspection and examination of the records in his office and reasonable facilities for making memoranda or abstracts therefrom, during the usual business hours, to all persons having occasion to make examination of them. The custodian of records may make reasonable rules and regulations necessary for the protection of the records and to prevent interference with the regular discharge of his duties."

[2] ORS 411.320 provides:

"For the protection of applicants for and recipients of public assistance, the Public Welfare Division and the county public welfare boards shall not disclose or use the contents of any records, files, papers or communications for purposes other than those directly connected with the administration of the public assistance laws of Oregon, and these records, files, papers and communications are considered confidential subject to the rules and regulations of the Public Welfare Division, except as otherwise provided in ORS 411.325 to 411.335. In any judicial proceedings, except proceedings directly connected with the administration of public assistance laws, their contents are considered privileged communications."

[3] ORS 418.130 provides:

"No person shall, except for purposes directly connected with the administration of aid to dependent children and in

In September 1971, the Oregon State Board of Social Protection was petitioned to order the involuntary sterilization of Patricia D. Stivahtis, one of the individual plaintiffs herein. The record does not indicate who filed the petition. Subsequently, the Board notified Mrs. Stivahtis that a hearing on the petition would be held to consider her mental and physical condition, personal records and family history, to determine whether her involuntary sterilization should be ordered.

■ At that time, both she and her husband, Richard T. Stivahtis, were receiving public assistance. They executed a release authorizing the Public Welfare Division to release to their attorneys its records regarding Mrs. Stivahtis's physical and mental condition or family history. Defendants refused to release the information, and plaintiffs brought this suit to establish their claim of right to access to public records under ORS 192.030. Both parties concede that recipients' records maintained by the Public Welfare Division are "public records" within the meaning of ORS 192.005 (5).[④]

accordance with the rules and regulations of the Public Welfare Division, solicit, disclose, receive, make use of, or authorize, knowingly permit, participate in, or acquiesce in the use of, any list of or names of, or any information concerning, persons applying for or receiving such aid, directly or indirectly derived from the records, papers, files or communications of the Public Welfare Division or acquired in the course of the performance of official duties."

[④] ORS 192.005 (5) provides:

" 'Public record' means a document, book, paper, photograph, file, sound recording or other material, such as court files, mortgage and deed records, regardless of physical form or characteristics, made, received, filed or recorded in pursuance of law or in connection with the transaction of public

Public policy in Oregon favors public access to government records. *Papadopoulos v. St. Bd. of Higher Ed.*, 8 Or App 445, 494 P2d 260, 265 (1972). ORS 192.030 articulates that policy:

> "The custodian of any public records of the state or a political subdivision, *unless otherwise expressly provided by statute,* shall furnish proper and reasonable opportunities for inspection and examination of the records * * *." (Emphasis supplied.)

Disclosure is the rule; withholding of public records is the exception, not authorized unless a statute expressly so provides. Being in derogation of the expressed public policy of this state, statutes creating exceptions to the rule favoring disclosure will not be given a broader interpretation than is necessary to accomplish their purpose.

That the purpose in making welfare records confidential is to protect the recipient is expressly stated in ORS 411.320:

> "*For the protection of applicants for and recipients of public assistance,* the Public Welfare Division and the county public welfare boards shall not disclose or use the contents of any records, files, papers or communications for purposes other than those directly connected with the administration of

---

business, whether or not confidential or restricted in use. 'Public records' includes correspondence, public records made by photocopying and public writings, but does not include:

"(a) Records of the Legislative Assembly, its committees, officers and employes.

"(b) Library and museum materials made or acquired and preserved solely for reference or exhibition purposes.

"(c) Extra copies of a document, preserved only for convenience of reference.

"(d) A stock of publications."

the public assistance laws of Oregon, and these records, files, papers and communications are considered confidential subject to the rules and regulations of the Public Welfare Division, except as otherwise provided in ORS 411.325 to 411.335. In any judicial proceedings, except proceedings directly connected with the administration of public assistance laws, their contents are considered privileged communications." (Emphasis supplied.)

That purpose is not apparent on the face of ORS 418.130:

"No person shall, except for purposes directly connected with the administration of aid to dependent children and in accordance with the rules and regulations of the Public Welfare Division, solicit, disclose, receive, make use of, or authorize, knowingly permit, participate in, or acquiesce in the use of, any list of or names of, or any information concerning, persons applying for or receiving such aid, directly or indirectly derived from the records, papers, files or communications of the Public Welfare Division or acquired in the course of the performance of official duties."

However, the legislative history of the latter statute makes it clear that it, too, is meant to protect the recipient. The predecessor of ORS 418.130 (formerly ORS 419.070) originally appeared in Oregon Laws 1939, ch 454, sec 12, p 888, and provided generally that welfare records were confidential, subject to the rules of the state public welfare commission.[5]

---

[5] Oregon Laws 1939, ch 454, sec 12, p 888 provided:

"* * * * *

"The state public welfare commission shall make and enforce reasonable rules and regulations governing the custody, use and preservation of the records, papers, files and communications of the state public welfare department and the county public welfare departments. The use of such records,

Provisions substantially the same as the present ORS 418.130 were added by a 1941 amendment, Oregon Laws 1941, ch 141, sec 2, p 213.® The amendment was part of a legislative package "* * * to amend the state laws to correspond with the federal laws * * *." Minutes, Joint Ways and Means Committee, January 30, 1941. The federal laws referred to required, as a condition of receiving federal funds, that a state plan for aid to dependent children must

> "* * * (8) provide safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with the administration of aid to dependent children * * *." Social Security Act Amendments of 1939, ch 666, § 401 (b), tit IV, 53 Stat 1379 (effective July 1, 1941).

That provision now appears as 42 USC § 602 (a)(9) (1969).

The objective of the required safeguards has

---

papers, files and communications by any other agency or department of government to which they may be furnished shall be limited to the purposes for which they are furnished and by the provisions of the law under which they may be furnished. Such records are confidential subject to the rules and regulations of the state public welfare commission."

® Oregon Laws 1941, ch 141, sec 2, p 213 provided, in pertinent part:

"* * * It shall be unlawful, except for purposes directly connected with the administration of aid to dependent children, and in accordance with the rules and regulations of the state public welfare commission, for any person or persons to solicit, disclose, receive, make use of, or to authorize, knowingly permit, participate in, or acquiesce in the use of, any list of or names of, or any information concerning, persons applying for or receiving such assistance, directly or indirectly derived from the records, papers, files or communications of the state public welfare commission or county public welfare commissions or acquired in the course of the performance of official duties * * *."

been variously described as " "* * * the protection of applicants and recipients from exploitation and embarrassment,' " *In re Cager,* 251 Md 473, 482, 248 A2d 384 (1968); "* * * to save recipients from any embarrassment * * *," *In re Will of Mellion,* 58 Misc2d 441, 295 NYS2d 822, 824 (1968); to prohibit "* * * any use of such records 'for commercial or political purposes,' " *Finance Committee of Falmouth v. Falmouth Board of Public Welfare,* 345 Mass 579, 584, 188 NE2d 848, 852 (1963); Annotation, 165 ALR 1302, 1330-31 (1946).

While there are no Oregon cases on that point, those objectives appear to have been embodied in Oregon statutes. In addition to the stated purpose of ORS 411.320, ORS 411.330 which allows qualified voters to inspect monthly records of the names of persons receiving assistance requires that the voter first sign a form stating, in pertinent part:

"I will not use any information secured from inspection of the welfare record books for commercial or political purposes of any nature." ORS 411.330 (1).

The Oregon cases interpreting ORS 411.320 have been concerned with that part of the statute which makes the contents of welfare records privileged communications in judicial proceedings, e.g., *Chandler v. State,* 230 Or 452, 370 P2d 626 (1962). The statute does not state who is the holder of the privilege. *Dicta* in *Groff v. S.I.A.C.,* 246 Or 557, 426 P2d 738, 742 (1967), implies that the recipient is the holder of the privilege and can therefore waive it, at least as to the recipient's own communications to the caseworker. *See, People v. Feuerstein,* 161 Misc 426, 293 NYS 239 (1936).

In any case, the *Groff* court noted that:

"We have held that the privilege conferred thereby is not an absolute one, regardless of who may claim it. [Citing Chandler v. State, 230 Or 452, 370 P2d 626 (1962).] Reese in The Oregon Lawyer's Trial Book, Evidentiary Privilege in Oregon, ch 3, § 3.47 (1967), referring to ORS 411.320 states:

" 'Despite the provisions of the statute, when the fundamental rights of a person are in jeopardy, parts of welfare records may, in the discretion of the court, be used * * *.' [Citations omitted.]" 246 Or at 564-65.

The limited scope of the privilege was also recognized in *State ex rel Juv. Dept. of Multnomah Co. v. Lamar,* 7 Or App 132, 490 P2d 191, 193 (1971). Other state courts appear to have construed the "safeguards" not to create an evidentiary privilege: *Hanson v. Rowe,* 18 Ariz App 131, 500 P2d 916 (1972); *State ex rel. Haugland v. Smythe,* 25 Wash2d 161, 169 P2d 706, 165 ALR 1295 (1946); *Price ex rel. Laramie Co. Dept. of Pub. Wel. v. Pearson,* 447 P2d 501 (Wyo 1968); *see* Wigmore, Evidence (3rd ed) 789-90, § 2377, n 12.

These cases reflect a judicial tendency to carry out the intent and purpose of statutes prohibiting disclosure of welfare records, but to go no further than the statutes require in keeping such information unavailable where the administration of justice requires its accessibility.

■ The question of confidentiality of welfare records must depend upon who is requesting their disclosure, and the function intended to be served by such disclosure. On the one hand, it is clear that the question of confidentiality would be resolved against a

third party seeking disclosure for the purpose of political or commercial exploitation of the information. Conversely, a person or agency seeking disclosure for purposes directly connected with the administration of public assistance is not barred by the statutes from receiving the information. By their terms, both ORS 411.320 and 418.130 except from the confidentiality requirement information sought or disclosed "for purposes directly connected with the administration" of public assistance or aid to dependent children.

Rule 8.040 of the Public Welfare Division Rules and Regulations provides:

> "The disclosure of information is deemed to be directly connected with the administration of public assistance or child welfare services when, in conformity with an authorization, signed by an applicant or recipient, information is given to any other agency, person or persons as therein authorized."

By their own rule, defendants appear to have provided that an applicant or recipient or his authorized representative is not barred by the statutes from access to his own file, because when a record is released with the recipient's permission, it is deemed to be released for a purpose outside the confidentiality requirement.

Although this rule was set forth in their pleadings, defendants have not explained why its effect should be other than the terms imply.

Defendants contend that the order of the trial court will unnecessarily hamper the free flow of information from outside sources necessary for the Public Welfare Division to assist the recipients, and that disclosure of the confidential communications concern-

ing subjective analysis and evaluation of the recipient may be potentially harmful to the recipient. In support of their position, defendants cite *Banner v. Smolenski,* 315 F Supp 1076 (D Mass 1970). The relevant question in *Banner* was whether Massachusetts and federal law required that a public assistance recipient be given access to his entire case record in preparing for a hearing. On that issue, the court concluded that a recipient was guaranteed access to any portion of his record that will actually be used at the hearing, but that neither federal nor state law *required* anything more. In reaching its conclusion, the court noted: "* * * [I]t should be remembered that the case record is not intended to be a public document * * *." 315 F Supp at 1082.

◼ The law in Oregon is to the contrary. Welfare records *are* public documents. Considering our public policy favoring disclosure, the terms and purpose of the statutes in question, the absence of legislative history to the contrary, and the welfare regulations themselves, we conclude that an interpretation of ORS 411.320 and 418.130 which would deny recipients access to their public assistance records is broader in scope than is necessary to accomplish their purpose. Those statutes are designed to protect applicants and recipients from exploitation by third parties, not from themselves. Thus, as to his own file, a recipient is not with the class of persons to whom disclosure of public assistance records is expressly forbidden by statute. There being no statute expressly providing otherwise, a public assistance recipient has a right to inspect his own file, under the provisions of ORS 192.030.

Affirmed.